**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

LYNDSEY BYRD, individually )
and on behalf of L.R.W., )
a minor child, )
               )
           Plaintiff, )
v. )     Case No. 23-cv-00404-CDL
               )
IND. SCH. DIST. NO. 8 OF )
TULSA COUNTY, OKLAHOMA )
(a.k.a. SPERRY PUBLIC SCHOOLS) )
et al.,[1] )
               )
           Defendants. )

## OPINION AND ORDER

Plaintiff Lyndsey Byrd alleges that, beginning in the fall of 2022, her minor son, L.R.W., was wrongfully excluded from the third- and fourth-grade boys' football team affiliated with defendant Independent School District No. 8 of Tulsa County, Oklahoma (commonly known as Sperry Public Schools, and sometimes referred to hereinafter as the "School District") and run by defendant Sperry Booster Club, Inc. (the "Booster Club"). Plaintiff alleges that L.R.W. continues to be excluded from the team without having been given any opportunity to seek reinstatement. The plaintiff filed a petition in Tulsa County District Court asserting federal and state-law claims against the School District; school

---

[1]    Based the representations in the Disclosure Statement filed at Doc. 8, the Court Clerk is **directed** to correct the name of the defendant identified as "Sperry Public Schools" to Independent School District No. 8 of Tulsa County, Oklahoma.

officials and board members; the Booster Club; and officers of the Booster Club. The case was timely removed to federal district court on the basis of federal-question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

Before the court are (1) the first Motion to Dismiss and Brief in Support (Doc. 16), respecting the plaintiff's Amended Petition filed in state court prior to removal, filed by the School District; Dr. Brian Beagles, the school district's superintendent and a member of its board; Richard Akin, the principal and athletic director of Sperry High School; Jeff Carter, president of the board of Sperry Public Schools; Gary Juby, vice president of the board of Sperry Public Schools; April Bowman, clerk of the board of Sperry Public Schools; Mechelle Beats, deputy clerk of the board of Sperry Public Schools; and Michelle Brown, a member of the board of Sperry Public Schools (collectively, the "School District Defendants"); (2) the School District Defendants' second Motion to Dismiss and Brief in Support (Doc. 22), respecting the plaintiff's Second Amended Complaint (SAC); and (3) the Motion to Dismiss and Brief in Support Thereof (Doc. 23), respecting the SAC, filed by Sperry Booster Club, Inc., an Oklahoma not-for-profit organization; Christina Hausner, vice president of the Booster Club; David Arnett, president of the Booster Club; Cody Williams, commissioner of the Booster Club; and Wes Orcutt, head coach of the third- and fourth-grade boys' football team for Sperry Public Schools (collectively, the "Booster Club Defendants"). (Doc. 21; *see also* Doc. 19 at 2-3).

2

## I.     Background

### A.     Preliminary Issue: Operative Complaint

A threshold issue is to identify the plaintiff's operative pleading at this stage. Before this action was removed, the plaintiff sought and obtained leave to file an amended petition, which she filed in state court on August 25, 2023. (Doc. 2-24). The School District Defendants removed the case on September 18, 2023, with the consent of the Booster Club Defendants. *See* Doc. 2 at 4. On September 25, 2023, before plaintiff's SAC was filed, the School District Defendants filed a Motion to Dismiss the original petition filed in Tulsa County District Court. (Doc. 16 at 1).

The plaintiff did not file a response to that motion. Instead, on October 16, 2023, plaintiff filed the SAC. (Doc. 21). In response, the School District Defendants filed a Motion to Dismiss the SAC and Brief in Support. (Doc. 22). In a footnote therein, the School District Defendants assert that, because plaintiff previously amended her original petition in Tulsa County District Court, the SAC could only be filed with leave of court or consent of the parties, which plaintiff did not obtain.

Under Fed. R. Civ. P. 15, when a party has already amended its pleading "once as a matter of course," the party may amend its pleading a second time "only with the opposing party's written consent or the court's leave." Fed. R. Civ. Proc 15(a)(1)-(2). Generally, "[t]he court should freely give leave" to amend a pleading, "when justice so requires." *Id.* Amendment should be denied only on a showing of undue delay, prejudice

3

to the opposing party, bad faith or dilatory motive, or futility. *See Duncan v. Mgr., Dep't of Safety*, 397 F.3d 1300, 1315 (10th Cir 2005).

Here, the School District Defendants only raise their objection to amendment in a footnote. They do not assert that any undue delay or prejudice would result from the filing of plaintiff's SAC, that plaintiff acted with any bad faith or dilatory motive in filing the SAC, or that the amendment would be futile. Moreover, all defendants have had an opportunity to respond to the SAC and have filed motions to dismiss now before the court for consideration. As such, the plaintiff's SAC is accepted as amended, as leave shall be freely given. (Doc. 21). The School District Defendants' first Motion to Dismiss (Doc. 16) is therefore **moot**.

## B.    Factual Allegations

Pursuant to the standards governing a motion under Fed. R. Civ. P. 12(b)(6), the following allegations set forth in the SAC are accepted as true. L.R.W., a minor child, is enrolled as a student at Sperry Public Schools. Lyndsey Byrd, L.R.W.'s mother, attended a sign-up event for boys' football, located at the Sperry High School football field equipment room, in approximately August 2022. Byrd applied for L.R.W. and her other two sons to receive scholarships to play sports. Hausner (an officer of the Booster Club) later informed Byrd that all three children were approved for scholarships, and Byrd entered into a contract with Sperry Booster Club for L.R.W. to play football. L.R.W. was one of "very

few black students engaged in sports programs with Sperry Booster Club, Inc." SAC ¶ 59.[2]

L.R.W. began attending practices at Sperry Public Schools' fourth- and fifth-grade center

and seemed to be doing well and enjoying participating on the team.

In September of 2022, defendant Williams called Byrd and summoned her to the

practice field to discuss what Williams termed "a big problem." *Id*. ¶ 65. Byrd drove to the

practice field and called Williams to ask about parking. During their phone conversation,

Williams advised Byrd, "don't bring that shit to my field." ¶ 67. The SAC does not provide

any explanation as to what this meant or was interpreted to mean. When Byrd arrived, she

was approached by Booster Club officers Arnett, Hausner, and Williams, and football team

coach Orcutt, who accompanied L.R.W. to meet Byrd outside the practice field gate. In

front of approximately 100 other people, Arnett

> stated that a complaint was written against L.R.W. for sexual assault
> on a little girl, and that they took it very seriously, and as a result
> L.R.W. was no longer allowed to play on the football team, or on any
> other booster club sports teams, and he was no longer allowed on the
> premises . . . .

*Id*. ¶ 74. The report had been made by a white male student, and the alleged female assault

victim is white. *Id*. ¶ 75-76.[3]

---

[2]     According to the SAC, the town of Sperry includes about 1,100 residents, with
Black individuals comprising less than one-tenth of one percent of the town's population.
SAC ¶ 27.

[3]     The SAC twice states that a white male student made the accusation. ¶¶ 76, 104.
However, subsequently the SAC alludes to L.R.W. having been accused of sexual
harassment by a white female student. ¶¶ 166; *see also* ¶ 165 (referring to "alleged
complaint by a white female student."); elsewhere, the SAC indicates plaintiff was not

During the conversation near the field gate, Byrd was cut off when she attempted to ask questions about the allegation made against L.R.W. *Id*. ¶ 79. L.R.W., then crying, was made to remove and return his helmet and pads immediately. Byrd was "crying so hard" she was unable to help him do so. *Id*. ¶ 82. Byrd walked L.R.W. toward her car, while assuring him everything would be okay. However, they were followed by Williams, yelling in an aggressive manner that Byrd "always plays the victim." *Id*. ¶ 85. Byrd and L.R.W. ultimately reached Byrd's car and drove away.

During the upsetting confrontation at the field, defendant Arnett advised Byrd that an appeals process was available. *Id*. ¶ 78. The following day, Byrd went to the police station "to obtain any report that was prepared concerning the accusations made against L.R.W.," but learned that no such report had been submitted. *Id*. ¶ 90-91. Byrd then called and texted with Hausner, who advised Byrd that she needed to complete certain paperwork in order to appeal. *Id*. ¶ 93. Byrd also texted Williams to ask for a copy of any written complaint, and Williams indicated he would provide a copy, but never did so. *Id*. ¶ 94-95.

Shortly thereafter, L.R.W. withdrew from Sperry Public Schools and briefly attended an online school, but he returned to his original school after less than two weeks. *Id*. ¶ 100-102. The SAC alleges that "L.R.W. specifically requested that Defendants provide him a process for adjudication of the alleged complaint under Title IX." *Id*. ¶ 144.

---

given information about the identity of the complainant. *Id*. ¶ 166. For the purpose of this analysis, the court construes the SAC to allege that a white male student falsely identified L.R.W. having assaulted a white female student.

Plaintiffs allege that, subsequently, Akin approached plaintiff's relative with the accusation that something was "wrong with [her] family," and that, on the same date, a school district employee "reached out to members of Plaintiff's family, and discontinued communication with Plaintiffs." SAC ¶¶ 185, 239.

Neither L.R.W. nor his parent have been provided with a copy of any complaint made against him. Nor has L.R.W.'s family been provided with an opportunity to appeal his dismissal from the team. He has not been reinstated to the football team or played for any sports team supported by Sperry Booster Club since he was terminated from the football team. *Id*. ¶ 105-107. L.R.W. has missed two seasons of football, despite being eligible for the team. *Id*. ¶ 235.

According to the SAC, it was later discovered that the boy who made the complaint against L.R.W. had lied and, in fact, was himself the one who allegedly assaulted the girl. *Id*. ¶ 103. However, the SAC alleges that defendants "still have not investigated or adjudicated the underlying" sexual assault allegation. *Id*. ¶ 223; *see also id*. ¶ 112 ("Upon information and belief, Sperry Public Schools never addressed the alleged original complaint, despite it involving at least three (3) of its students and having allegedly occurred on school grounds during extra-curricular activities.").

The SAC asserts that L.R.W. was falsely accused, wrongfully excluded from the football team, and denied access to a process to rejoin the football team. The plaintiff alleges that L.R.W. has been disciplined "more harshly than white and female peers without process or any basis in fact," *id*. ¶ 119, and that L.R.W. was treated differently based on

7

race and sex because defendants "automatically assume[ed] his culpability" and failed to provide him with process to dispute the allegation. *Id*. ¶¶ 136-138.

The SAC alleges L.R.W. continues to be deprived of educational opportunities, in retaliation for having asserted a complaint of race and sex discrimination, despite being eligible for continued participation. *Id*. ¶¶ 135-137. Plaintiff alleges that the School District Defendants "continu[e] to bully [Byrd] and her extended family, fail[ed] to respond to bullying of their student and a parent, bull[ied] an employee of the School District (relative of Plaintiffs), fail[ed] to establish policy and procedure to mitigate harm (as required by law), and continu[e] to support Sperry Booster Club, Inc. after it is clear they are depriving their student of an educational opportunity without process as based upon sex and race." *Id*. ¶ 183. The SAC alleges that, after plaintiff filed this lawsuit, Akin (the principal of Sperry High School) approached a family member of Byrd's who is employed at the school and asked her, "what is wrong with your family?" *Id*. ¶ 185.

The SAC also alleges that the School District improperly publicized the allegation against L.R.W. and that, as a result of these events, L.R.W. was "ostracized from his peers" at school and subjected to bullying and retaliation. *See id*. ¶¶ 167-168, 232. It alleges that the defendants failed to protect L.R.W.'s privacy and failed to protect L.R.W. from harassment in the form of the false accusation made against him. *Id*. ¶¶ 120, 157. The SAC

alleges that L.R.W.'s sibling has also been bullied as a result of the false accusation and the defendants' handling of the false allegations. *Id.* ¶ 231.[4]

The SAC asserts claims for: race discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; sex discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq.; claims under 42 U.S.C. § 1983 for violation of L.R.W.'s rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment; § 1983 conspiracy; violation of Article 2, § 36A of the Oklahoma Constitution (i.e., "*Bosh*" claim); breach of contract, negligence, and intentional infliction of emotional distress. (*See* Doc. 19 at 1 (Joint Status Report)). Plaintiff seeks compensatory and actual damages, attorneys' fees, and punitive damages. SAC ¶¶ 291-293.

In its Motion to Dismiss, the School District Defendants argue that plaintiff has failed to state a federal claim for which relief can be granted and that dismissal is warranted under Fed. R. Civ. P. 12(b)(6). (Doc. 22). They argue that the court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims and argue, alternatively, that each of the state law claims fails to state a claim under Rule 12(b)(6). In a separate Motion to Dismiss, the Booster Club Defendants argue that plaintiff's federal and state law claims should be dismissed under Rule 12(b)(6) and, alternatively, any remaining state law claims should be remanded to state court. (Doc. 23).

---

[4]    Plaintiff has not asserted any claims on behalf of L.R.W.'s sibling.

## II.     Legal Standards

### A.     Rule 12(b)(6) Standard

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). It must contain enough "facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted).

At this stage, the court must accept all the well-pleaded allegations of the complaint as true and must construe the allegations in the light most favorable to claimant. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs,* 263 F.3d 1151, 1154–55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Cory v. Allstate Ins.,* 583 F.3d 1240, 1244 (10th Cir. 2009) (quoting *Hall v. Bellmon,* 935 F.2d 1106, 1109-10 (10th Cir. 1991)).

### B.      Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated [plaintiff's] constitutional rights, which were clearly established at the time of the violation." *Id.* Thus, the first prong of the analysis is whether the allegations plausibly show that "the defendant's actions violated a federal constitutional or statutory right," and the second prong asks whether "the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal citations and quotations omitted). If the plaintiff fails to satisfy either prong of the inquiry, then the defendant is entitled to qualified immunity. *See id.* (citing *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017)). Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Courts will consider qualified immunity at the dismissal stage, although such "defenses are typically resolved at the summary judgment stage . . . ." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Asserting qualified immunity at the dismissal stage subjects the defendant raising it to a more challenging standard than would apply at

the summary judgment stage, because one is a pleading standard, whereas the other involves evidence. *See id.*; *see also Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At [the pleading] stage, it is the defendant's conduct as *alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'") (emphasis in original) (citation omitted). And, because "discovery may inform the context [of the individual defendants'] actions," the "'denial of qualified immunity at the dismissal stage does not preclude a renewal of that defense at summary judgment after further factual development has occurred.'" *Schwartz*, 702 F.3d at 587 (quoting *Weise v. Casper*, 507 F.3d 1260, 1265 (10th Cir. 2007)).[5]

## III.   Booster Club Defendants' Motion to Dismiss

### A.   Federal Claims

#### 1.   Title VI[6]

Title VI of the Civil Rights Act of 1964 "protects the right to be free from discrimination under a program that receives federal funding." *Bryant v. ISD I-38 of Garvin County, Okla.*, 334 F.3d 928, 931 (10th Cir. 2003) (citing 42 U.S.C. § 2000d). Section 601

---

[5]   As this case is at the pleading stage and the court has determined to permit the plaintiff to file an amended pleading with additional factual allegations (if additional facts are known), the court will decline *at this time* to determine the qualified immunity issue. However, the court may determine qualified immunity, if raised in any motion to dismiss filed on any subsequent amendment.

[6]   Because there is overlap between the Booster Club's arguments on Title VI and the School District's, this section will at times also refer to the School District.

of the Act, encoded at 42 U.S.C. § 2000d et seq, states that "[n]o person . . . shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.* This section "prohibits intentional discrimination based on race, color, or national origin in covered programs and activities." *Id.*, 334 F.3d at 931 (citing *Alexander v. Sandoval,* 532 U.S. 275, 276 (2001)).

To state a claim of discrimination under Title VI, a plaintiff must allege facts establishing that (1) the defendant discriminated against the plaintiff on the basis of race, color, or national origin, and (2) the entity engaging in discrimination is receiving federal financial assistance. *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993); *Al Ghareeb v. Bd. of Trustees at Univ. of N. Colo.*, No. 19-cv-00228-STV, 2020 WL 136647, at *5 (D. Colo. Jan. 13, 2020); *see also McDaniel v. Dominium Mgmt. Servs., LLC*, No. 21-CV-01997-RMR-NYW, 2022 WL 1316384 (D. Colo. May 3, 2022), report and recommendation adopted, No. 121CV01997RMRNYW, 2022 WL 20440201 (D. Colo. June 15, 2022).

Title VI "prohibits only instances of intentional discrimination," *Bryant*, 334 F.3d at 931. Thus, to establish discrimination in violation of Title VI, a plaintiff generally must show that (1) he is a member of a protected class, (2) he suffered an adverse action, and (3) the circumstances "giv[e] rise to an inference of" intentional discrimination. *Al Ghareeb*, at n.3; *see also Bryant*, 334 F.3d at 930 n.1 (explaining that, in addressing a Title VI claim, 'courts often use the Title VII proof scheme."). "While the 12(b)(6) standard does not

13

require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

The SAC alleges that the defendants "excluded L.R.W. from participation in programs and activity, that receive the benefit of Federal financial assistance, on the basis of his race." SAC ¶ 274. The plaintiffs assert Title VI claims under theories of direct discrimination and hostile environment. The SAC also alleges that both the School District and Sperry Booster Club receive federal financial assistance. *Id*. ¶ 134.[7]

It is not disputed that the SAC alleges that L.R.W. is a Black student and therefore a member of a protected class. *See id*. ¶ 59. The plaintiffs allege that L.R.W. suffered an adverse action in being excluded from a football program in which he was eligible to participate. *See id*. ¶ 136. Thus, the SAC satisfies the first two elements of a Title VI claim. The issue, therefore, is whether the SAC alleges facts supporting an inference that the

---

[7]     A Title VI claim may be asserted against an entity that receives federal funding, but not against an individual. *See Webb v. Swensen*, 663 F. App'x 609, 613 (10th Cir. 2016) ("Title VI forbids discrimination only by recipients of federal funding; therefore, individual employees of such entities are not liable under Title VI."); *see also* 42 U.S.C. § 2000d-4a (defining "program or activity" as, *inter alia*, any governmental department or agency, higher education institution, corporation, or any other entity); *Silva v. St. Anne Cath. Sch*., 595 F. Supp. 2d 1171, 1179 (D. Kan. 2009) ("The law is clear that individuals are not subject to liability under Title VI in their individual capacities."). Therefore, to the extent the SAC purports to assert claims under Title VI against any defendant in an individual capacity (i.e. Arnett, Hausner, Orcutt, and Williams), such claims are dismissed with prejudice.

defendants intentionally excluded L.R.W. from the football program on the basis of his race.

A plaintiff may satisfy the intent element of a Title VI discrimination claim by establishing disparate treatment amongst similarly situated individuals. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). Here, the SAC alleges that L.R.W. was treated "more harshly" than white and female students. SAC ¶ 119. However, the SAC does not identify another member of the team who was treated differently under similar circumstances. While the SAC does allege that the defendants failed to investigate or adjudicate the white student who allegedly committed the assault, it does not indicate whether the white student was a member of the football team, that a similarly situated white student was permitted to continue playing sports, or that a similarly situated white student was afforded an opportunity to appeal his removal from the team. *See id.* ¶¶ 103, 137, 157, 160, 223-26. As such, the SAC fails to allege sufficient facts to support the intent element on this basis. *Cf. Orr*, 417 F.3d at 1152; *Bryant*, 334 F.3d at 930 (prima facie case of discrimination established where plaintiffs "alleged that they were suspended after the February 8, 2000, fight while Caucasian students who participated in the fight were not suspended.").

The plaintiffs also assert their Title VI claims based on a hostile-environment theory. As the Tenth Circuit recently explained in the educational context,

> To allege a plausible claim of a racially hostile environment under Title VI, the plaintiff must allege, in relevant part, that [he] was subjected to harassment based on [his] race and that the harassment was so severe,

15

pervasive, and objectively offensive that it deprived the plaintiff of access to the educational benefits or opportunities provided by the school.

*Seymore v. Tulsa Tech. Center*, 2024 WL 3342452 at *4 (10th Cir. July 9, 2024) (unpublished) (citing cases).

The SAC asserts that defendants have condoned student-on-student harassment of L.R.W. and have actively harassed L.R.W. and his family. Read in the light most favorable to the plaintiffs, the SAC alleges the following specific incidents of arguable harassment:[8]

> --On a phone call, Booster Club commissioner Cody Williams told Ms. Byrd "don't bring that shit to my field." SAC ¶ 67.
>
> --Members of the Booster Club informed Byrd and L.R.W. about the accusation made against L.R.W. and the decision to remove L.R.W. from the football team in a confrontational and humiliating manner. *Id*. ¶¶ 65-84.
>
> --Cody Williams followed L.R.W. and his mother "aggressively, yelling that . . . Byrd 'always plays the victim.'" *Id*. ¶ 85.
>
> --After plaintiffs filed this action, Richard Akin, the high school principal and athletic director, approached a relative of plaintiffs "and asked her 'what is wrong with your family?'" *Id*. ¶ 185.[9]

---

[8]    With respect to student-on-student incidents, the SAC does not support an inference that L.R.W. was harassed by other students under the Booster Club's purview. The SAC alludes to an unspecified "series of events involving the bullying of L.R.W.'s sibling," which allegedly "resulted in students fighting at the school," but plaintiffs do not allege facts showing that the Booster Club had authority or control over events that took place during school. SAC ¶¶ 231.

[9]    The court notes that the SAC does not identify Akin as a member of the Booster Club.

16

The SAC also alleges that the defendants' failure to provide a fair grievance procedure to L.R.W. "created a hostile environment whereby L.R.W. was denied access to an educational opportunity." SAC ¶ 152. However, none of these alleged actions or inactions facially appear to be related to race. *Cf. Seymore*, No. 23-5127, slip op. at 11. Nor does the SAC plausibly allege that these incidents were the cause of L.R.W.'s loss of opportunity. Accordingly, the SAC does not allege sufficient facts to support a Title VI hostile-environment claim against the Booster Club or the School District.

### 2.    Title IX[10]

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To state a cause of action under Title IX, a plaintiff must show that (1) he or she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) the program receives federal assistance; and (3) the exclusion from the program was on the basis of sex. *Seamons v Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996).

Here, with respect to the Booster Club, the SAC alleges sex discrimination based on only one incident—the "false allegation made against [L.R.W.]" of sexually assaulting

---

[10]    As with Title VI, discussed supra, a Title IX claim can only be maintained against an entity receiving federal funding, not an individual. *See Tucker v. Univ. of New Mexico Bd. of Regents*, 618 F. Supp. 3d 1201, 1213 (D.N.M. 2022). Therefore, any purported Title IX claims asserted against individual defendants are dismissed with prejudice.

a female student. *Id*. However, the allegations in the SAC do not support a claim that L.R.W. was excluded from the football team on the basis of sex. Significantly, none of the plaintiff's allegations involve any similarly situated female students. *Cf. Seamons*, 84 F.3d at 1233 (noting the plaintiff had not alleged defendants would have responded differently if a similar set of facts had occurred in the women's athletic program). The SAC refers only to the "boys' football team[s]," with no facts indicating that any similarly situated girls participated on the team or were excluded from it or any other sports program. SAC ¶¶ 60-62. There are no facts alleged in the SAC plausibly indicating that L.R.W. was denied the benefits of an educational or athletic program because of his sex.

Additionally, to be actionable under Title IX, sexual harassment must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650 (1999). With respect to the Booster Club, the SAC asserts sex-based discrimination only in conclusory terms. *See, e.g.*, *id*. ¶ 163 (alleging defendants "engaged in sex-based discrimination" by excluding L.R.W. from the football team); ¶ 255 (alleging the "[d]efendants have granted preferential treatment to a white and female student to the detriment of L.R.W."). Moreover, courts have rejected the notion that a false accusation of sexual assault is, in itself, harassment based on sex for the purpose of a Title IX claim. *See, e.g., Doe v. Univ. of Chicago*, No. 16-C-08298, 2017 WL 4163960, at *7 (N.D. Ill. Sept. 20, 2017) (collecting cases). Even assuming (without deciding) that the false accusation against L.R.W. constituted sexual harassment, the remaining generalized

statements, without more, do not plausibly allege that sexual harassment against L.R.W. was so severe, pervasive, and objectively offensive as to deprive L.R.W. of educational opportunities.

Accordingly, the plaintiff's Title IX claim is dismissed as asserted against the Booster Club.

### 3.   § 1983 Claims

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

The Booster Club Defendants argue that they are not state actors subject to liability under § 1983 and that the SAC fails to plausibly allege conduct taken under color of state law. The SAC alleges that

> Sperry Booster Club, Inc., is a state actor providing educational opportunities for the benefit of children in the Sperry Public Schools school district, and is an arm of the athletic department of Sperry Public Schools.

*Id*. ¶ 43. As set forth in the SAC, the Booster Club, along with the School District Defendants, "jointly offer educational opportunities to students in Sperry Public Schools by offering and providing opportunities in athletics." *Id*. ¶ 212. It allegedly "operates the

provision of educational opportunities, in the form of athletics prior to high school, for children for Sperry Public Schools school district." *Id*. ¶ 42.

The inquiry of whether an entity is a state actor is "necessarily fact-bound." *Brentwood Acad. v. Tenn. Secondary Schs. Ath. Ass'n*, 531 U.S. 288, 298 (2001). For purposes of a motion to dismiss under Rule 12(b)(6), the SAC plausibly alleges that the Booster Club and its officers act under color of state law—effectively as a local government entity. *Cf. id.*, 531 U.S. at 296 (internal citations omitted) ("We have treated a nominally private entity as a state actor when it is controlled by an 'agency of the State,' when it has been delegated a public function by the State, when it is 'entwined with governmental policies,' or when government is 'entwined in [its] management or control.").

### a.  Equal Protection

Under the Equal Protection Clause of the Fourteenth Amendment, a state may not "deny to any person within its jurisdiction the equal protection of the laws." Section 1983 provides a private right of action for denials of equal protection by a municipal entity or any other person acting under color of state law. *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1249 (10th Cir. 1999).

To survive a motion to dismiss a class-of-one equal protection claim, a plaintiff must allege facts plausibly demonstrating that, compared with others similarly situated, the plaintiff was treated differently based on impermissible considerations such as race. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011).  In such cases, the Tenth Circuit has "recognized a 'substantial burden' that plaintiffs demonstrate others

'similarly situated in all material respects' were treated differently and that there is no objectively reasonable basis for the defendant's action." *Id*. at 1217 (citing *Jicarilla Apache Nation v. Rio Arriba County,* 440 F.3d 1202, 1212 (10th Cir. 2005)).

The SAC alleges that the Booster Club's actions deprived L.R.W. of the equal opportunity to play football, in violation of his rights under the Equal Protection Clause. However, the SAC fails to allege facts sufficient to state a "class-of-one" equal protection claim. That is, as discussed *supra* with respect to plaintiff's Title VI claim, (1) none of the alleged actions by the Booster Club or its members appear on their face to be related to race; and (2) the SAC does not allege sufficient facts to infer that an individual similarly situated in all material respects was treated differently than L.R.W. The SAC also does not allege sufficient conduct attributable to any of the individual Booster Club Defendants to state an equal protection claim against any individual. Accordingly, without more, the SAC does not state a viable equal protection claim against the Booster Club Defendants.

### b.  Due Process

The Fourteenth Amendment provides that no state shall deprive any person of his life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. "A plaintiff must allege a deprivation of a sufficient property or liberty interest to invoke the protection of the Due Process Clause . . . ." *Seamons*, 84 F.3d at 1234 (discussing Fifth Amendment Due Process clause).

To the extent that L.R.W. has been deprived of the opportunity to play football, "[p]articipation in interscholastic athletics is not a constitutionally protected civil right."

21

*Albach v. Odle*, 531 F.2d 983, 984-85 (10th Cir. 1976); *see also Seamons*, 84 F.3d at 1234

("With regard to the specific components of education . . . we do not believe that [plaintiff]

has a constitutional right to those particular incidents of education."). Thus, the allegations

in the SAC do not identify any due process violation in that respect. Moreover, the plaintiff

does not allege that L.R.W. has been deprived of a constitutionally protected interest in

receiving public education generally. *See Seamons*, 84 F.3d at 1234.

To the extent the plaintiff seeks to hold the Booster Club for harassment L.R.W. and

his family have been subjected to, "state actors are liable only for their own acts, and not

the violent acts of third parties." *Armijo v. Wagon Mound Pub. Schs.,* 159 F.3d 1253, 1260

(10th Cir. 1998). However, "[u]nder the 'danger creation' exception, a state actor may be

held liable for the violent acts of a third party if the state actor 'created the danger' that

caused the harm." *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002).

> A danger creation claim must meet a six-part test: (1) the state entity and
> individual actors created the danger or increased plaintiff's vulnerability to
> the danger; (2) plaintiff was a member of a limited and specifically definable
> group; (3) defendant's conduct put plaintiff at substantial risk of serious,
> immediate, and proximate harm; (4) the risk was obvious and known; (5)
> defendants acted recklessly in conscious disregard of that risk; and (6) such
> conduct, when viewed in total, shocks the conscience.

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist*., 511 F.3d 1114, 1126 (10th Cir.

2008) (internal citations omitted).

Here, the SAC alleges several instances of conduct by the Booster Club or its

members that are easily characterized as offensive, rude, and likely to harm L.R.W.'s best

interests. However, the SAC fails to allege sufficient facts to establish the elements of a danger-creation claim. The SAC asserts that defendants failed to protect L.R.W.'s privacy and alludes to "publicized accusations of sexual harassment made by Defendants" that have harmed L.R.W. (SAC ¶ 168). But the SAC does not allege when, in what manner, or by whom any inappropriate disclosure took place. Additionally, the SAC characterizes actions of the School District Defendants as "shocking, outrageous, and utterly intolerable," *id*. ¶ 192, but it does not allege behavior by the Booster Club or its members that rises to the level of conscience-shocking. The Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation." *D.T. by M.T. v. Ind. Sch. Dist. No. 16 of Pawnee County, Okla*., 894 F.2d 1176, 1188 (10th Cir. 1990).

Arguably conscience-shocking is the Booster Club's alleged failure to provide a fair process by which to seek L.R.W.'s reinstatement on the team—either immediately after the events in question or at any time in the following year. The SAC plausibly alleges, at a minimum, negligent conduct by the Booster Club and unconscionable treatment of a child. But the SAC has not alleged facts sufficient to link Booster Club Defendants' conduct with a constitutional violation under the danger-creation theory. Accordingly, the § 1983 claim based upon alleged due process violation is dismissed.

## B.   State Law Claims

### 1.  Breach of Contract

The Booster Club Defendants argue that the plaintiff does not allege the existence of a contract between herself and the Booster Club. (Doc. 23 at 11). However, the SAC

clearly alleges that the plaintiff entered into a contract with Sperry Booster Club, Inc. for L.R.W. to play football. SAC ¶ 58; *see also id*. ¶ 241. The plaintiff alleges that the Booster Club Defendants barred L.R.W. from participating in its football program and, in so doing, breached the implied duty of good faith and fair dealing contained within that contract. *See* ¶¶ 242-243. As such, the SAC sufficiently alleges facts supporting a contract claim as to the Booster Club. *See First Nat'l Bank and Trust Co. of Vinita v. Kissee,* 859 P.2d 502, 509 (Okla. 1993) ("The common law imposes this implied covenant upon all contracting parties, that neither party, because of the purposes of the contract, will act to injure the parties' reasonable expectations nor impair the rights or interests of the other to receive the benefits flowing from their contractual relationship.").[11]

Because the SAC does not allege the existence of a contract between the plaintiff and any individual defendant, any breach of contract claim asserted against the individual Booster Club Defendants is subject to dismissal.

### 2. Remaining State Law Claims (Negligence/negligence per se/res ipsa loquitor, IIED, and Oklahoma Constitutional Tort claims)

The Booster Club Defendants contend that the court should remand plaintiff's remaining state law claims if it dismisses all of plaintiff's federal claims. They do not

---

[11] The Booster Club presented an argument for dismissal of the contract claim on a substantive ground, rather than based on a request that the court decline to exercise supplemental jurisdiction. Because the court has determined that plaintiff has not stated a federal claim against the Booster Club Defendants, the court will not exercise supplemental jurisdiction over this claim absent an amendment that satisfies the standards for stating a federal claim..

otherwise argue that the SAC fails to allege plausible state-law claims. Although the court has determined that the plaintiff has not stated a federal claim against the Booster Club defendants by the allegations in the SAC, the plaintiff will be granted leave to file a third amended complaint, if desired, in an attempt to state a federal claim under Title VI, Title IX, and § 1983 against the Booster Club and under § 1983 against the individual defendants. As a result, the court declines at this time to dismiss the state law claims, pending determination as to whether the plaintiff has stated a federal claim as the basis for exercising supplemental jurisdiction over the state law claims.

## IV.   School District Defendants' Motion to Dismiss

### A.   Federal Claims

#### 1.   Title VI

For the same reasons explained *supra* Part III.A.1, the SAC fails to allege sufficient facts to state a Title VI claim against the School District.

#### 2.   Title IX

For the same reasons explained *supra* Part III.A.2, the SAC fails to allege sufficient facts to state a Title IX claim against the School District based on the theories of direct discrimination or hostile environment.

With respect to the School District, the plaintiffs further assert that the defendants retaliated against L.R.W. and Byrd in violation of Title IX. (*See* SAC ¶¶ 114-168). To state a claim for retaliation, a plaintiff must allege: "(1) that she engaged in protected activity; (2) that she suffered a material adverse action; and (3) that a causal connection existed

25

between the protected activity and the adverse action." *I.G. v. Jefferson Cnty. Sch. Dist.*, 452 F. Supp.3d 989, 1002 (D. Colo. 2020) (citing *L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 551 (3d Cir. 2017) (unpublished)). Notably, the act of retaliation itself is actionable under Title IX, as "it is an intentional response to the nature of the complaint: an allegation of sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174, 125 S. Ct. 1497, 161 L.Ed.2d 361 (2005).[12]

Defendants do not dispute that the filing of an action asserting claims under Title IX, inter alia, constitutes protected activity under Title IX. Viewed generously in the light most favorable to the plaintiff, the SAC alleges that, shortly after plaintiff engaged in protected activity, defendants blocked plaintiff's efforts to have L.R.W. reinstated to the football team. *See* SAC ¶ 239 (alleging school district employee "discontinued communication" with L.R.W.'s family); *id*. ¶ 235 (alleging that L.R.W. "is still being denied an opportunity to participate in football and has now missed the brunt of two seasons"). The alleged sequence and temporal proximity of these events supports a reasonable inference of causation. Accordingly, the SAC plausibly alleges retaliation in violation of Title IX as against the School District. *See Rubio v. Turner Unified Sch. Dist. No. 202*, 453 F. Supp.2d 1295, 1307 (D. Kan. 2006) (retaliation claim "appears to be viable

---

[12] The defendants do not argue that a Title IX retaliation claim is viable only if the underlying conduct complained of violated Title IX. In the Title VII context, the Tenth Circuit has rejected a similar argument. *See Reznik v. inContact, Inc*., 18 F.4th 1257, 1260 (10th Cir. 2021).

against the District" where plaintiff alleged school principal "had notice of the alleged misconduct and actually participated in it" after plaintiff filed lawsuit). [13]

### 3.  § 1983 Claims

#### a. Equal Protection

The court notes that the right to be free from racial discrimination in a public school "has been clearly established since at least 1950." *Sturdivant v. Blue Valley Unified Sch. Dist.*, 2019 WL 2297517, at *6 (D. Kan. 2019) (citing *McLaurin v. Okla. State Regents for Higher Educ.*, 339 U.S. 637, 642 (1950)); *see also Doe v. Los Angeles Unified Sch. Dist.*, 2017 WL 797152, at *19 (C.D. Cal. 2017) (citing, *inter alia*, *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012)). However, for the same reasons set forth *supra* Part III.A.3, the SAC fails to allege facts sufficient to state a "class-of-one" equal protection claim against the School District.

The SAC contains only very generalized allegations that "customary practices" of the School District foster a culture of bullying and racially hostile environment. *See* SAC ¶¶ 195-196. Plaintiff also alleges the School District "actively ratified" the actions of the Booster Club as well as known harassment of L.R.W. by other students. *Id*. ¶¶ 50, 120. In

---

[13]    The retaliation allegations appear to be directed primarily or entirely at the School District. However, there is a general allegation that the "Defendants" retaliated. While the court finds that a generous reading of the allegations of the SAC, taken as true, states a claim for Title IX retaliation against the School District, the allegations of the SAC as to the Booster Club or any individual defendants are insufficient to state that claim based on the limited, general allegations of retaliation by "Defendants."

alleging that the district has adopted a custom of permitting harassment and bullying, Plaintiff primarily points to the historical context of the 1921 Tulsa Massacre, a horrific incident that also involved an unfounded allegation of sexual contact by a Black male with a white female. In its aftermath, mobs of white citizens killed of many of Tulsa's Black citizens, burned more than one thousand homes, and destroyed what was known as America's Black Wall Street, a thriving area of commerce on the northeast of downtown Tulsa. Notwithstanding the historical context, no allegations in the SAC connect the events of 1921 to any of the defendants in this case or to any custom or policy of the School District today. As the undersigned previously noted with respect to allegations attempting to link the atrocious historical Tulsa events of 1921 to a current-day lawsuit, such allegations, "while historically and technically accurate, are clearly not essential . . . to the determination of the plaintiff's specific claims . . . a century later." *See United States of America v. American Bank of Oklahoma*, No. 23-cv-371-CDL, 2023 WL 6393177, at *2 (Oct. 2, 2023).

The SAC also does not allege sufficient conduct attributable to any of the individual School District Defendants to state an equal protection claim against any individual. Accordingly, without more, the SAC does not state a viable equal protection claim against the School District Defendants.

### b.  Due Process

The SAC contains no allegations regarding the actions of any individual School District Defendants except Akin, and the specific actions alleged by Akin, in themselves,

are not sufficient to constitute a denial of a constitutional right. In the absence of allegations showing that specific defendants caused a violation of plaintiff's or L.R.W.'s rights, the individual School District Defendants will be entitled to qualified immunity as to plaintiff's equal protection claim. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) ("Because § 1983 and *Bivens* are vehicles for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants.").

With respect to the School District, as discussed *supra* Part III.A.3, the allegations in the SAC do not identify a violation of any right protected by the Due Process Clause to the extent that L.R.W. has been denied an opportunity to participate in athletics.

Here, the plaintiff asserts that the defendants created "an environment of hostility and bullying" that resulted in a violation of plaintiff's and L.R.W.'s substantive due process rights. SAC ¶ 187. Plaintiff alleges that "L.R.W. has been ostracized from his peers at Sperry Public Schools" and "subjected to bullying and retaliation." SAC ¶ 232. The events in question caused L.R.W. to "express[] a state of humiliation and a strong desire not to return to Sperry Public Schools." *Id*. ¶ 99.

While a school district can be subject to liability for a due process violation under the danger-creation theory, the SAC does not allege facts sufficient to state such a claim

29

against the School District. Although the specifics of plaintiff's danger creation theory are somewhat unclear, the gist of this claim is that the school district is liable for "ratifying" and "sponsor[ing]" actions of the Booster Club, despite knowing that the Booster Club promotes a hostile environment that engenders racial discrimination. *Id*. ¶ 188.  Plaintiff alleges that the School District Defendants created or increased the risks of "bullying, the creation of a hostile environment, and the arbitrary denial of educational opportunities." *Id*. ¶ 190.

The "state-created danger doctrine 'necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger.'" *Ruiz*, 299 F.3d at 1183. "Affirmative conduct for purposes of § 1983 should typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration." *Id*. However, factual allegations of this nature are absent from the SAC. While plaintiff points to the allegation that Akin verbally reproached her relative, there are no supporting allegations that this conduct imposed an immediate threat of harm to plaintiff or L.R.W.

Accordingly, plaintiff's due process claims are subject to dismissal.

**B.      State Law Claims**

**1.      Breach of Contract**

As noted above, in the factual allegations, plaintiff asserts that she "entered into a contract *with Sperry Booster Club, Inc.*, for her son L.R.W. to play football." SAC ¶ 58 (emphasis added). Under the claim for relief, however, plaintiff only vaguely asserts that "[t]he Defendants, Sperry Public Schools and Sperry Booster Club, Inc., and the

Plaintiffs[sic] entered into a contract" and asserts that "[t]he Defendant" breached the covenant of good faith and fair dealing contained within the contract. *Id*. ¶ 241-243. Because the SAC does not identify any separate contract plaintiff entered into *with the School District* or what the School District was obligated to do under such contract, and does not otherwise contain any *factual* allegation supporting a breach of contract claim against the School District, any such claim is subject to dismissal.[14]

### 2.   Negligence, Negligence Per Se, Res Ipsa Loquitor

Plaintiff alleges that the defendants owed and breached duties of care to act reasonably under the circumstances. SAC ¶ 246-247. The SAC asserts that the School District Defendants, "fail[ed] to respond to bullying of a student and a parent . . . [and] fail[ed] to establish policy and procedure to mitigate harm (as required by law)." *Id*. ¶ 183.

The individual School District Defendants contend this claim should be dismissed because, as alleged in the SAC, any actions by school officials were performed in the scope of their employment. Under the Oklahoma Governmental Tort Claims Act (OGTCA), only a governmental entity can be liable for a tort committed by an employee while acting within

---

[14]     In her response brief, the plaintiff argues that she can assert a breach of contract claim against the School District on the theory that she and L.R.W. are third-party beneficiaries of the alleged contract between Sperry Public Schools and Sperry Booster Club. (*See* Doc. 29 at 4). However, the SAC fails to clearly assert a theory of third-party contractual liability. The SAC states that the plaintiffs are third-party beneficiaries of an agreement between the School District and Booster Club. However, it makes no further reference to this theory of liability in the Causes of Action or elsewhere in the SAC.

the scope of employment. The OGTCA precludes tort actions against "an employee of the state or political subdivision acting within the scope of his employment." *Okla. Stat.* tit. 51, § 163(C); *see also id.*, §§ 152.1(A), (B), 153(A) (political subdivisions and their employees acting in scope of employment are immune from tort liability, except that the state waives the immunity as to the political subdivisions). Thus, individual government employees are immunized from tort liability for actions taken while acting within the scope of employment. *See id.* § 163(C); *see also Speight v. Presley*, 203 P.3d 173, 179 (Okla. 2008).

Here, the plaintiff has not alleged that the individual School District Defendants acted outside the scope of their employment.[15] Accordingly, the OGTCA confers immunity on the individual School District Defendants as to plaintiff's claims for negligence, negligence, per se, and res ipsa loquitor.

### 3. Intentional Infliction of Emotional Distress

Plaintiff's intentional infliction of emotional distress (IIED) claims are subject to dismissal. As to the School District, the OGTCA precludes this claim, because such a claim necessarily excludes good faith conduct, and an employee committing that tort could not be considered to have been acting within the scope of employment for purposes of the

---

[15]   The School District Defendants do not contend that the School District is an improper defendant as to the negligence, negligence per se, and res ipsa loquitor claim, or that the SAC fails to state such a claim. Accordingly, this claim may proceed as asserted against the School District.

OGTCA. *See, e.g., McMullen v. City of Del City*, 920 P.2d 528, 531 (Okla. Civ. App. 1996);

*Shaw v. City of Okla. City*, 380 P.3d 894, 897 (Okla. Civ. App. 2016).

As to the individual School District Defendants, the SAC does not allege any specific conduct by most of the individuals. The plaintiff's specific allegation regarding Akin's verbal confrontation with her relative, as discussed *supra*, does not allege facts that would rise to the level of outrageousness required to set forth an emotional distress claim under Oklahoma law. Liability for IIED

> has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Breeden v. League Servs. Corp.,* 575 P.2d 1374, 1376 (Okla. 1978) (quoting Restatement (Second) of Torts § 46, cmt. d); *see also Estate of Trentadue v. United States,* 397 F.3d 840, 856 n.7 (10th Cir. 2005) (holding trial court must assume a "gatekeeper role" and make an initial determination that the alleged conduct "may be reasonably regarded as sufficiently extreme and outrageous" to maintain a claim for IIED). Accordingly, plaintiff's IIED claim is dismissed as to the School District Defendants.

### 4.  Oklahoma Constitutional Tort/*Bosh* Claim

The plaintiff asserts a claim for alleged violation of L.R.W.'s rights under Article 2, § 36A of the Oklahoma Constitution, which prohibits discrimination based on race, color,

sex, ethnicity or national origin "in the operation of . . . public education." Okla. Const. Art. 2 § 36A(A). This claim is asserted based on *Bosh v. Cherokee County Building Authority*, in which the Oklahoma Supreme Court recognized a cause of action by a pre-trial detainee alleging excessive force in violation of Article 2, Section 30 of the Oklahoma Constitution. 305 P.3d 994 (Okla. 2013), *superseded by statute*, *see Barrios v. Haskell County Pub. Facilities Auth'y*, 432 P.3d 233 (Okla. 2018).

Subsequent to *Bosh*, the Oklahoma Supreme Court held that the Oklahoma Legislature amended the OGTCA to make clear that the state and its subdivisions' immunity from suit extends to torts arising from alleged state constitutional violations. *See Barrios*, 432 P.2d at 238-39; *see also Earles v. Cleveland*, 418 F. Supp. 3d 879, 890-91 (W.D. Okla. 2019) (citing *Bruning v. City of Guthrie*, No. CIV-15-0003-HE, 2015 WL 4925995, at *8 (W.D. Okla. Aug. 18, 2015)) ("[T]he Oklahoma Supreme Court has since made it explicitly clear that *Bosh* is not a 'wide ranging authorization of private rights of action for all claims arguably arising under the Oklahoma Constitution.'"). Accordingly, the court agrees with the School District Defendants' argument that, as to the School District, plaintiff's claim under the Oklahoma Constitution should proceed "as any other tort claim brought pursuant to the [OGTCA]." (Doc. 22 at 24).

As to the individual School District Defendants, as with the plaintiff's negligence claim, the SAC does not allege that the individual defendants acted outside the scope of

their employment.[16] Accordingly, the OGTCA confers immunity on the individual School District Defendants as to plaintiff's claim for violation of her rights under the Oklahoma Constitution.

## V.      Conclusion

Based on the above analysis, the School District Defendants' first Motion to Dismiss (Doc. 16) is **moot**; the School District Defendants' second Motion to Dismiss (Doc. 22) is **granted in part and denied in part**; and the Booster Club Defendants' Motion to Dismiss (Doc. 23) is **granted**, all as follows:.

1.      As to Sperry Booster Club, Inc.: All of the plaintiff's federal claims are dismissed. While the court determined that the plaintiff has stated a claim for breach of contract against the Booster Club, the court will not exercise supplemental jurisdiction over that state-law claim, or any other state-law claim, if no federal claim is ultimately stated by amended pleading. The plaintiff is granted leave to file a third amended complaint, if desired, in an attempt to state a claim against the Sperry Booster Club.

2.      As to individual Booster Club Defendants (Hausner, Arnett, Williams, and Orcutt): All federal claims are hereby dismissed. The Title VI and Title IX

---

[16]      The School District Defendants do not argue that the School District is an improper defendant as to the negligence, negligence per se, and res ipsa loquitor claim, or that the SAC fails to state such a claim. Accordingly, this claim may proceed as asserted against the School District.

claims against these individual defendants are dismissed with prejudice. The § 1983 claims are dismissed without prejudice, with leave to amend if desired. Absent a federal claim, the court will not exercise supplemental jurisdiction over any state law claims against those defendants.

3.      As to the School District: The plaintiff's Title VI claim is dismissed, the discrimination and hostile environment claims under Title IX are dismissed, all claims brought under § 1983 are dismissed, and the state law claims for breach of contract and IIED are dismissed, all without prejudice and with leave to amend. The plaintiff is granted leave to file a third amended complaint in an attempt to state additional claims against the School District, if desired.

4.      As to the individual School District Defendants (Akin, Beagles, Beats, Bowman, Brown, Carter, and Juby): All federal claims are dismissed. The Title VI and Title IX claims against these individual defendants are dismissed with prejudice. The § 1983 claims are dismissed without prejudice and with leave to amend if desired. Absent a federal claim, the court will not exercise supplemental jurisdiction over any state law claims against those individual defendants.

5.      Any amended pleading shall be filed by **October 21, 2024**. To survive dismissal, any amended pleading shall contain sufficient factual allegations to address the foregoing deficiencies set forth in the court's analysis of each claim under the applicable legal standards. If any additional claims are directed by amendment at any of the individual defendants, any amended pleading shall be

36

specific as to which individual is alleged to have done what particular conduct. Conclusory allegations as to all "Defendants" will not be considered to cure the factual and legal deficiencies discussed in this order. As noted above, the court reserves determination of the claims against the individual defendants based on qualified immunity, if the plaintiff reasserts any such claims by amendment.

The Court Clerk is **directed** to correct the name of the defendant identified as "Sperry Public Schools" to Independent School District No. 8 of Tulsa County, Oklahoma.

IT IS SO ORDERED this 30th day of September, 2024.

Christine D. Little
United States Magistrate Judge